# NO. 12-14-00166-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | § | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | § | *COUNTY COURT AT LAW* |
| *PROTECTION OF A. W.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A.W. appeals from an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication-forensic. In one issue, A.W. asserts the evidence is legally insufficient to support the trial court's order. We affirm.

## BACKGROUND

George Howland, M.D. signed an application for an order to administer psychoactive medication-forensic to AW. In the application, Howland stated that A.W. was subject to an order for inpatient mental health services issued under Chapter 46C (not guilty by reason of insanity) of the Texas Code of Criminal Procedure. He testified that A.W. had been diagnosed with schizophrenia, paranoid type, and requested the trial court to compel A.W. to take psychoactive medications including antidepressants, anxoilytics/sedatives/hypnotics, antipsychotics, and mood stabilizers. According to Howland, A.W. refused to take the medications voluntarily. In Howland's opinion, A.W. lacked the capacity to make a decision regarding administration of psychoactive medications because he feels he is "cured" from his mental illness, has no insight into his mental illness, and has paranoid and delusional thoughts.

Howland concluded that these medications were the proper course of treatment for A.W. and that, if he were treated with the medications, his prognosis would be improved. Howland believed that, if A.W. was not administered these medications, the consequences would be continued lack of insight into his mental illness, irritable mood, and paranoid and delusional

thoughts. Howland considered other medical alternatives to psychoactive medications, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and A.W.'s best interest. Howland also considered less intrusive treatments likely to secure A.W.'s agreement to take psychoactive medications.

The trial court held a hearing on the application. At the close of the evidence, the trial court granted the application. After considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medications was in A.W.'s best interest and that A.W. lacked the capacity to make a decision regarding administration of the medications. The trial court authorized the Department to administer psychoactive medications to A.W., including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, A.W. argues that the evidence is legally insufficient to support the trial court's order to administer psychoactive medication-forensics. More specifically, A.W. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication.

### Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

2

## Order to Administer Psychoactive Medication

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (West 2010). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (West 2010).

In making its findings, the trial court must consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(b) (West 2010).

## Hearing on Application

At the hearing on the application, Howland testified that he had been A.W.'s treating physician for the past two years. A.W. was subject to an order for court ordered inpatient mental health services under Chapter 46C of the Texas Code of Criminal Procedure, and the underlying charge was the murder of his parents. Howland said that A.W. was suffering from schizophrenia, paranoid type. He wanted access to have A.W. take psychoactive medications including antidepressants, anxoilytics/sedatives/hypnotics, antipsychotics, and mood stabilizers. He believed that these medications would improve A.W.'s moods, and his delusional and

3

paranoid thoughts. If A.W. did not take these medications, his prognosis was poor. According to Howland, A.W. needs medications to treat his schizophrenia. In his opinion, if someone has a diagnosis of schizophrenia and has committed a crime as "heinous" as the one A.W. committed, then that person needs to be on medication for the rest of his life.

Howland believed A.W. lacked the capacity to make a decision regarding the use of medications. A.W. refused to accept medication voluntarily for the past two years because he did not believe he needed medications, that medications had not helped him get out of the hospital in the past, and that he had been cured with steroids. Howland stated that he had not known steroids to cure mental illnesses. He tried to explain to A.W. in the past two years the reasons for the medications and their potential risks and benefits. However, he said, A.W. did not understand because he lacks insight about his mental illness and did not believe he was mentally ill.

Howland testified that A.W.'s symptoms included paranoid thoughts and delusional ideas about certain issues. A.W. believed that people on the unit were stealing his coffee even though the hospital staff could not find any evidence of theft. He also believed that the State would pay for his placement when he left the hospital even though the staff attempted to explain to him multiple times that the contrary was true. Howland attributed A.W.'s misunderstandings regarding state regulations to his mental illness, explaining that such a fixed, false belief was delusional. Howland explained that the week before the hearing, the treatment team decided to move A.W. to a locked unit because he showed increased mood instability and heightened psychotic symptoms, and had not been sleeping well. Over the past three or four months, A.W.'s moods had worsened, leading to several incidents where he would become upset and scream at the staff. At one point, Howland said, A.W. got very upset and raised his voice at a supervisor because he did not get some additional items he wanted while shopping. The staff became fearful of him. Howland said that A.W.'s actions indicated a rigid thought process and that his responses to the staff's explanations were not reasonable.

Howland testified that he would give A.W. the least amount of medications to treat his symptoms, that he was aware of medications that A.W. had concerns about, and that he would avoid them. A.W. never expressed any constitutional or religious reasons for refusing medications, but merely told Howland that he had taken medications in the past and they did not help him get out of the hospital. None of A.W.'s medical conditions would conflict or pose

4

additional dangers if Howland prescribed psychoactive medications. In fact, he met with the hospital's clinical psychiatric pharmacist who reviewed A.W.'s record. They found several medications that A.W. had not taken that they believed were good choices and might help him remain in the HOPE unit.[1] If A.W. experienced an adverse side effect to the medications, he would look at other options. However, he said, A.W. refused those medications.

A.W. testified that he did not need psychotropic medications because he evidenced no signs of psychosis or mental illness. He had been on the HOPE unit for three years, although he admitted that he had been moved to a locked unit recently. While on the HOPE unit, he worked in the warehouse and his responsibilities included helping with the inventory, receiving and stocking items, and cleaning the warehouse. A.W.'s warehouse supervisor testified that A.W. had never exhibited any behavior that caused him to become fearful or concerned that he might need medications. He stated that he had never had a complaint about A.W. and would hire him if he were another person looking for a job.

A.W. testified that at one point, he had asked the judge in Jefferson County what it would take to get out of the hospital, and the judge told A.W. that he needed to take psychotropic medications. A.W. stated that he and his physician at the time instituted a regime of psychotropic medications in an attempt to get him out of the hospital. But taking psychoactive medications did not make any difference to the judge in Jefferson County. Instead, A.W. said, these medications harmed his health. He admitted that he had been in a hospital for twenty-six years and that he had been medicated for fifteen years.

A.W. stated that he was allergic to some psychoactive medications including Clozaril, Seroquel, Respirdal, Invega, Zafress, and Abilify. Some of his reactions included low white blood cell count, shaking, and blurred vision. A.W. said that he suffered strokes in 1991 and 1993, and testified that these medications were not recommended for someone with a history of strokes. He was fearful of possible negative reactions from these medications. Further, A.W. said, he had previously taken the two medications recommended by Howland and the hospital's clinical psychiatric pharmacist. These medications caused him to suffer bad side effects.

---

[1] From testimony at the hearing, this appears to be a unit at the Hospital where the patients are not on one-on-one observation, are not on psychotropic medication if they are able to stay in control of their moods and psychotic symptoms, and are allowed to have the staff shop at stores for them. Howland also testified that patients are not on court-ordered medications in the HOPE unit.

**Analysis**

The evidence showed that A.W. lacked the capacity to make a decision regarding administration of psychoactive medications because he believed he was "cured," by steroids in the past, had no insight into his mental illness, did not believe he was mentally ill, did not believe he needed medications, and had paranoid and delusional thoughts. Howland testified regarding A.W.'s recent behavior including his delusional ideas about state regulations, paranoid beliefs that his coffee was being stolen, increased mood instability, and heightened psychotic symptoms. His behavior caused the treatment team to move A.W. to a locked unit the week before the hearing.

A.W. was concerned about taking psychoactive medications because of his history of allergies and strokes. From Howland's testimony, it is apparent that he took into account A.W.'s past experiences with psychoactive medications when he prescribed the medications in consultation with the hospital's clinical psychiatric pharmacist. *See In re E.K.*, No. 12-06-00407-CV, 2007 WL 1492104, at *4 (Tex. App.—Tyler May 23, 2007, no pet.) (mem. op.); *In re D.H.*, No. 12-04-00181-CV, 2004 WL 2820896, at *4 (Tex. App.—Tyler Dec. 8, 2004, no pet.) (mem. op.). The trial court is not required to defer to A.W.'s preferences, but must consider them. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that A.W. lacked the capacity to make a decision regarding administration of the proposed medications and that treatment with the proposed medications were in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); *In re J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court's order. *See id*. Accordingly, we overrule A.W.'s sole issue.

**DISPOSITION**

Having overruled A.W.'s sole issue, we *affirm* the trial court's order.

**BRIAN HOYLE**
Justice

Opinion delivered October 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 30, 2014

### NO. 12-14-00166-CV

### THE STATE OF TEXAS FOR THE
### BEST INTEREST AND PROTECTION OF A. W.

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 40,982)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order to administer psychoactive medication-forensic of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*